In re GENTEK INC., et al., and
Noma Company, Debtors.

No. 02–12986 MFW.

United States Bankruptcy Court,
D. Delaware.

Aug. 11, 2005.

Mark S. Chehi, Esquire, David R. Hurst, Esquire, Skadden, Arps, Slate, Meagher, & Flom LLP, Wilmington, DE, Counsel for Reorganized Debtors (excluding Noma Company).

Debra S. Belaga, Esquire, Stephen H. Warren, Esquire, Brian M. Metcalf, Esquire, O'Melveny & Myers LLP, San Francisco, CA, Special Litigation Counsel to Reorganized Debtors.

Joseph Grey, Esquire, Stevens & Lee, P.C., Wilmington, DE, Local Counsel for Tony Newman and Dorothy Lenoir.

R. Patrick Harris, Esquire, Jaress & Leong, Esquire, Honolulu, HI, Counsel for Tony Newman and Dorothy Lenoir.

Mark D. Collins, Esquire, Michael J. Merchant, Esquire, Richard, Layton, & Finger, P.A., Wilmington, DE, Counsel for JPMorgan.

Kenneth S. Ziman, Esquire, William Russell, Jr., Esquire, Robert H. Trust, Esquire, Simpson Thacher & Bartlett LLP, New York, NY, Counsel for JPMorgan.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Gen-Tek, Inc., and its affiliates ("the Debtors") for an Order Enforcing Plan of Reorganization, Confirmation Order, and Cash Collateral Order. The Motion is joined by JPMorgan Chase Bank, N.A., ("JPMorgan") as agent for the pre-petition lenders (the "Lenders"). Tony Newman and Dorothy Lenoir (the "California Plaintiffs") oppose the Motion. After considering the briefs and arguments of the parties at the hearing held on May 25, 2005, the Court will grant the Motion, in part.

## I. FACTUAL BACKGROUND

On October 11, 2002, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Prior to the petition date, the Debtors owned and operated a chemical facility in Richmond, California ("the Facility"). The Facility allegedly released sulfur dioxide and sulfur trioxide into the environment, causing various injuries to local residents. The California Plaintiffs commenced a class action lawsuit in state court in California on behalf of themselves and all persons who suffered damages as a result of the releases ("the Class Action"). The Class Action was automatically stayed on the petition date pursuant to section 362.

The California Plaintiffs timely filed proofs of claim in the bankruptcy case. The Debtors filed their Second Proposed Joint Plan of Reorganization (the "Plan") on August 28, 2003. The Plan treated the California Plaintiffs (and all members of the Class Action) as Class 10 claimants.

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Under the Plan, Class 10 claimants receive a pro-rata share of stock, warrants, and preference recoveries for any portion of their claims which are not covered by insurance. Class 10 voted to reject the Plan and the California Plaintiffs filed an objection to confirmation of the Plan. On October 7, 2003, the Court confirmed the Plan over the California Plaintiffs' objection.

Thereafter, on February 7, 2004, the Debtors and the California Plaintiffs executed a Case Management Stipulation (the "Stipulation"). The Stipulation modified the automatic stay and discharge injunction to allow the California Plaintiffs' claims to be liquidated in the Class Action. On February 18, 2004, the Court approved the Stipulation.

In August 2004, the California Plaintiffs filed a separate Complaint against Latona Associates, Inc., Prestolite Wire Corporation, and JPMorgan, which was later consolidated with the Class Action. In April 2005, the California Plaintiffs amended that Complaint to add two fraudulent transfer counts. The California Plaintiffs assert in Count I of the Amended Complaint that the Debtors' payment of $90 million to Prestolite Wire Corporation for the stock of Digital Communications in August 2000 is avoidable as a fraudulent transfer under California law. In Count II the California Plaintiffs allege that the Debtors' grant of a lien on the Debtors' assets to JPMorgan in the amount $750 million is also avoidable as a fraudulent transfer.

On April 26, 2005, the Debtors filed their Motion which seeks to preclude the California Plaintiffs from pursuing the fraudulent transfer actions. JPMorgan filed a Joinder to the Motion on May 3, 2005. The California Plaintiffs objected to the Motion on May 18, 2005. Oral argument was held on May 25, 2005. The matter is ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A) & (O).

## III. *DISCUSSION*

### A. *The Cash Collateral Order*

■ The Debtors and JPMorgan assert that the Amended Complaint is barred by the Cash Collateral Order entered on November 14, 2002. Paragraph 10 of that Order provides in relevant part:

> The Debtors ... shall be deemed to have waived and released, on behalf of themselves and their estates, all claims and causes of action under Sections 544, 545, 547, or 548 of the Bankruptcy Code (collectively, the *"Avoidance Actions"*) seeking to recover or avoid any liens granted to, transfers to or for the benefit of, or other obligations incurred in favor of the Administrative Agent or any Lender .... The Administrative Agent and the Lenders shall not be subject to any other or further claims or causes of action by any party in interest seeking to exercise the rights of the Debtors' estates, except to the extent (and only to the extent) of: (x) in the case of any Avoidance Action, the specific liens, transfers or other obligations that are the subject of an adversary proceeding commenced by the Debtors or any other party authorized or permitted under applicable law to do so, if any, against the Administrative Agent or any Lender no later than February 24, 2003....

Thus, in exchange for the use of cash collateral, the Debtors released the Lenders from avoidance actions. Although the Creditors' Committee and other creditors (including the California Plaintiffs) were given additional time to bring such actions against the Lenders, none were filed by the deadline. The Debtors and JPMorgan

assert that the California Plaintiffs are, therefore, prohibited from pursuing the fraudulent transfer claims in their Amended Complaint.

The California Plaintiffs argue that the Cash Collateral Order does not enjoin their suit. In fact, they argue there is no language in the Cash Collateral Order which enjoins anything. The California Plaintiffs acknowledge that the Cash Collateral Order may bar their action, by releasing the claims against the Lenders, but insist that it must be raised as an affirmative defense in the Class Action.

The Court agrees with the procedural argument of the California Plaintiffs. The Cash Collateral Order does not enjoin any suit. For it to have done so, an adversary proceeding would have been necessary. *See* Fed. R. Bankr.P. 7001(7). Therefore, the Cash Collateral Order does not bar the filing of the Amended Complaint, although it may be an affirmative defense that JPMorgan may raise in the Class Action.

### B. *The Plan*

The Debtors contend that under the Plan they retained, and released, the fraudulent transfer claims which the California Plaintiffs now seek to pursue. Further, they argue that the Plan does expressly enjoin the California Plaintiffs from asserting such claims in the Class Action. Specifically, the Debtors note that pursuant to section 6.13 of the Plan, the Debtors *retained* all "Litigation Rights," which are defined to include "claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code." Under section 12.9(a) of the Plan, the Debtors *released* certain third parties, including the Lenders and the Debtors' directors, officers, employees, and advisors, from "claims or causes of action arising under Chapter 5 of the Bankruptcy Code." Section 12.11(b) of the Plan *enjoins* all

"Persons" who hold a claim or cause of action that has been released by section 12.9 of the Plan from commencing or continuing any actions that are inconsistent with the terms of the Plan.

### 1. *The Stipulation*

■ The California Plaintiffs preliminarily ask that the Court refrain from deciding this issue because the Stipulation requires that the state court decide it. Paragraph one of the Stipulation provides:

Subject to entry of appropriate orders by the Bankruptcy Court, the State Coordination Court and any other applicable court in accordance with the provisions of this stipulation, the Parties agree that the automatic stay and discharge injunction should be modified to the extent necessary to allow all California Tort Claims, State Court Cases, and the Reeve Lawsuit, and all issues relating thereto (including but not limited to all claims against non-Debtor defendants, including but not limited to Reeve), to be liquidated in the State Coordination Court. The automatic stay and discharge injunction will remain in effect with respect to collection against Debtors, and the terms of the Plan will govern any judgment or other recovery against Debtors. The Parties agree that fragmented litigation is to be avoided to the greatest extent possible and that all California Tort Claims, the Reeve Lawsuit and the State Court Cases, and any and all claims against any and all parties arising out of or relating to the May 1, 2001 or November 29, 2001 releases from General Chemical's Richmond, California, facility, should be litigated in the same court (except only to the extent that said court lacks jurisdiction over any party to the proceedings).

The Court rejects the California Plaintiffs' argument. The provision on which they rely does not *require* that all litigation be heard in the state court. The Stipulation merely provides that "fragmented litigation is to be avoided to the greatest extent possible." Moreover, the present Motion involves the threshold issue of whether the litigation is permitted to proceed at all and does not address the merits of the disputed claims. Resolving the instant Motion requires interpretation of the Plan, the Confirmation and Cash Collateral Orders, and recent Third Circuit case law. This Court, therefore, is in a better position than the state court to rule on the Motion.

■ The California Plaintiffs also argue that the Stipulation modified the Plan injunction to permit them to proceed with the Class Action and the claims they now assert in the Amended Complaint. The California Plaintiffs are incorrect. The Stipulation modified the "discharge injunction" only. That is, it only modified the injunction which prohibits actions against the Debtors for discharged claims. *See* Plan § 12.11(a). Because the discharge injunction, created by section 524(a), only applies to the personal liability of the *Debtors*, a modification of the discharge injunction cannot affect non-debtors. Further, the Stipulation only *partially* modified the discharge injunction to permit the California Plaintiffs' claims against the Debtors to be *liquidated* in the state court rather than in the Bankruptcy Court. It did not otherwise modify the terms of the Plan.

Specifically, the Stipulation did not modify the injunction in section 12.11(b) of the

Plan which enjoins actions against parties released by section 12.9. Further, the claims in dispute are not related to the pre-petition toxic spills. Therefore, the Stipulation language which modified the discharge injunction to permit "all issues related thereto" to proceed in state court does not include the claims at issue here.[2] Thus, the Court concludes that the Stipulation does not permit the Amended Complaint to proceed against the non-debtor defendants, in contravention of the terms of the Plan.

### 2. *PWS Holding Corporation*

■ The parties dispute the application of a recent Third Circuit case. *In re PWS Holding Corporation*, 303 F.3d 308 (3d Cir.2002). The Debtors assert that, just as in *PWS*, their Plan released the estate's cause of action against JPMorgan and other third parties. Therefore, creditors such as the California Plaintiffs can no longer pursue state law fraudulent conveyance actions against those parties. *PWS Holding Corporation*, 303 F.3d at 311.

The California Plaintiffs contend that *PWS* is distinguishable from this case. In *PWS*, the debtor's plan expressly extinguished any state law fraudulent transfer claims asserted by a creditor, Haskell, arising from a leveraged recapitalization. *Id.* In the present case, section 12.9(a) of the Plan releases all estate claims against JPMorgan without expressly stating that it includes any claim the California Plaintiffs may have against JPMorgan. The Court concludes, however, that this distinction is not dispositive.

---

**2.** JPMorgan also argues that the Stipulation cannot affect its rights because it was not a party to the Stipulation. (The Stipulation was an agreement between the Debtors, the California Plaintiffs, and the Reeve Trucking Company.) It is not necessary to decide

whether the language "any and all parties" in the Stipulation was meant to include only those parties to the Stipulation, because the Court concludes that the Stipulation does not permit the prosecution of the claims in the Amended Complaint.

Section 544(b)(1) states that the trustee or debtor in possession "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under the Bankruptcy Code. In other words, the debtor in possession is placed in the shoes of an actual unsecured creditor who can avoid the disputed transfer under state law.

In this case, the Debtors held the right under section 544(b)(1) to pursue the fraudulent transfers that the California Plaintiffs now assert in state court. The Debtors, however, decided not to pursue those claims. Instead, to effectuate their reorganization, the Debtors released the claims through various settlements and compromises with the Lenders and the Creditors Committee embodied in the Plan.[3] *See* Plan §§ 2.2 & 12.9(a). These settlements and compromises were approved as part of the confirmation of the Plan, enabling the unsecured creditors (including the California Plaintiffs) to receive a distribution. *See* Confirmation Order at ¶¶ H, K, & 7.

In *PWS*, the Third Circuit affirmed the District Court's order enjoining Haskell's suit because the debtors, after conducting a thorough investigation, resolved the claims by extinguishing them under the plan. While the plan in *PWS* expressly referred to Haskell's suit, the operative language of that section was the release of "any and all avoidance claims." 303 F.3d at 311. The express reference was certainly helpful for purposes of clarity, but was unnecessary. *Id.* at 315. Haskell's

suit would have been enjoined without that reference because Haskell's claims were avoidance claims that accrued to the debtors under section 544(b)(1) and were released. The difference, therefore, between the plan in *PWS* and the Plan in the present case is immaterial.[4]

Accordingly, the Court concludes that the California Plaintiffs' Amended Complaint, to the extent it asserts fraudulent conveyance claims against parties which were released by the Debtors in the Plan, is enjoined by the Plan and Confirmation Order.

### 3. *Cybergenics*

The California Plaintiffs argue nonetheless that their suit cannot be enjoined because the fraudulent transfer claims in question were not property of the Debtors' estate. *See, e.g., Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics),* 226 F.3d 237, 243 (3d Cir.2000). Instead, they argue the claims are direct, non-derivative claims held by the California Plaintiffs that were not released by the Plan. The California Plaintiffs cite section 12.9(b) of the Plan, which provides in relevant part:

Each holder of a Claim that affirmatively votes in favor of the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against ... (ii) the Existing Lenders, the Existing Lender Agent, the Creditors Committee ... (iii) any of the directors, officers, and employees of the Debtors serving immediately prior to the Effective Date, those of Debtors'

---

**3.** The Creditors Committee also conducted an investigation and decided to settle any action against the Lenders in exchange for the distribution to unsecured creditors provided by the Plan.

**4.** The Court also notes that, in the present case, the Debtors could not have made an express reference in the Plan to Amended Complaint because the California Plaintiffs filed it only after the Confirmation Order was entered.

directors, officers, and employees designated on Exhibit F, and any of the Debtors' present agents or professionals (including any professionals retained by the Debtors) ... (iv) Latona, any directors, officers, and employees of Latona....

Because the California Plaintiffs rejected the Plan, they contend that their direct claims against JPMorgan, the Debtors' directors, officers, and employees, and Latona Associates were not released by the Plan.

Although section 12.9(b) does preserve any direct claims of the California Plaintiffs, their reliance on *Cybergenics* to assert that the claims at issue were not enjoined is misplaced. That case addressed whether fraudulent transfer claims had been transferred to the purchaser of the debtor's assets. The Court, in holding that they had not been transferred, stated that the causes of action under section 544 were not property of the estate but instead were a power that the debtor could wield for the benefit of all creditors. 226 F.3d at 243–44.

■ In this case, the issue is whether the Debtors properly exercised their power under section 544 by releasing the Lenders and other third parties from fraudulent transfer claims. The California Plaintiffs overlook the fundamental bankruptcy principle that the right to pursue fraudulent transfer claims shifts to the debtor in possession upon the filing of a chapter 11 petition notwithstanding that, outside of bankruptcy, such claims belong solely to the creditors. Thus, it is irrelevant that the disputed claims are not part of the Debtors' estate.

Nor is *Cybergenics* inconsistent with the holding in *PWS* that the Debtors can re-lease or settle fraudulent transfer claims in their Plan. In *PWS*, Haskell asserted that *Cybergenics* supported his position that the estate did not own the fraudulent conveyance action and, therefore, could not release it. 303 F.3d at 314. The Third Circuit rejected Haskell's argument, concluding that, notwithstanding the fact that the cause of action is not property of the estate, the debtor has the power to pursue and settle those claims. *Id.* at 315.

Therefore, the Court concludes that the Debtors had the power to release the fraudulent transfer claims that the California Plaintiffs seek to pursue. Because the Debtors released those claims in the Plan, the Plan and the Confirmation Order enjoin the California Plaintiffs from now prosecuting those claims.[5]

### C. *Attorneys' Fees*

■ The Debtors and JPMorgan seek attorneys' fees for the actions necessitated by the California Plaintiffs' pursuit of the fraudulent conveyance claims that were released by the Plan. The Court will deny that request. Although *PWS* is similar to this case in most respects, the conduct of the creditors is distinguishable. In *PWS*, Haskell continued his suit in state court even after his motion to remove the express reference to his suit from the Confirmation Order was denied. Here, the California Plaintiffs made a good faith, but incorrect interpretation of the Plan, Stipulation, orders of the Court, and Third Circuit authority.

Under the "American Rule," the prevailing party does not get its attorney's fees paid by the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *See also In re Fox,* 725 F.2d 661,

---

**5.** Of course, pursuant to section 12.9(b) of the Plan, any direct claims of the California Plaintiffs that are not held by the Debtors under section 544 were not released by the Plan and may be pursued.

662 (11th Cir.1984) ("This rule is obviously applicable to the bankruptcy courts as well"). Consequently, the Court will not award fees and costs to the Debtors and JPMorgan.

## IV. CONCLUSION

For the reasons stated above, the Court will grant the Debtors' Motion, in part.

An appropriate order is attached.

### *ORDER*

AND NOW, this **11TH** day of **AUGUST, 2005**, upon consideration of the Debtors' Motion for an Order Enforcing Plan of Reorganization, Confirmation Order, and Cash Collateral Order, the responses thereto, and the oral arguments presented at the hearing on May 25, 2005, it is hereby

**ORDERED** that the Debtors' Motion is **GRANTED IN PART**; and it is further

**ORDERED** that the California Plaintiffs are enjoined from prosecuting the fraudulent transfer claims set forth in Counts I and II of their Amended Complaint.